STOULIG, Judge.
This is an appeal from a judgment dismissing Mrs. Rose Pareti Taquino’s suit, to evict her tenants W. F. Minchen and E. S. Morrison [1] from the premises at 619 Bourbon Street in the Vieux Carre of the City of New Orleans.
In 1967, plaintiff and the defendants signed a 10-year lease with an additional 10-year option. The rent was $400 per month for the first year; $450 for the second through the fifth; $500 for the sixth through the tenth; and $650 for the eleventh through the twentieth, should lessees exercise their option. Lessees also were obligated to spend a minimum of $27,600 for improvements during the first year of the lease.
*571 This historie old building, erected between 1810 and 1812, was in a badly deteriorating and uninhabitable condition when the lessees took possession. After spending $52,000 the lessees transformed it into an attractive and functional building. As is usual in restoration projects in the French Quarter, a series of “before” and “after” photographs were made of the interior and exterior. The pictures establish a crumbling ruin was successfully renovated. Why the cost of restoration was so much higher than the $27,600 improvement figure in the lease was that serious structural weakness was detected in the main rear wall and other masonry defects were found when work began.
Appellant’s primary complaint is that lessees, in partially enclosing an arch in this wall, made a structural change without her written authorization. She cites the quoted section of the lease as a basis for now seeking its cancellation:
“FOURTH — A
“Neither Lessor nor Lessee shall make any structural additions or alterations to the premises without written permission of the other party hereto. However, Lessor or her employees shall have the right to enter the premises for the purpose of making repairs necessary for the preservation of the property. Any additions made to the property by Lessee shall become the property of Lessor at the termination of this lease, unless otherwise stipulated herein.”
When the building was originally erected the arch was open and functioned to support the weight of the building. But when the lease was signed, the original arch was partially enclosed with wood braces and brick pillars, and these additions were actually supporting the weight the arch was designed to carry. Stewart Farnet, the architect who directed the renovation, and Gerald Gelpi, the contractor, testified in substance that the crumbling brick pillars erected in the aperture of the original archway and collapsing masonry work caused the cost of renovation to almost double from the original estimate of $27,600 to approximately $52,000.
In transforming the decaying main rear wall into a structurally sound one lessees were complying with these sections of the lease:
“THIRD
“It is mutually agreed between the parties hereto that the said premises are accepted by lessee in such condition as is apparent at the time of entering into this agreement with the full recognition and realization that certain repairs are required, more particularly, Lessee takes cognizance of all plumbing and electrical work in the condition that now exists.
“FOURTH
“Lessee agrees to maintain the leased premises in good condition at his expense and to return said property to Lessor in such condition at the termination of this lease, normal decay, wear and tear excepted.
******
“FIFTH
“Lessee agrees that at least ($27,600) twenty-seven thousand six hundred dollars of improvements to the leased premises shall be made within a one year period from date of execution of this lease.
******
“TWENTY FIRST
“Lessor and Lessee agree the attached estimates of repair shall be a guideline for betterments and improvements to the building as noted in FIFTH article above.” (Emphasis added.)
The attached estimate called for: “Miscellaneous masonry work required to reconstruct defective wall areas.” (Item 1 — f of the addendum.)
Without structural changes in the rear wall the lessees could not have used the building. The repairs were specifically authorized by the section of the addendum quoted above. The lease did not call for a restoration of the property, that is, to rebuild it as it existed in the early 1800s when it was new. Their obligation was to im *572 prove and renovate. This they did at great expense.
Defendants suggest Mrs. Taquino is attempting to repossess her property now that it is in mint condition and the sequence of her pleadings lend some credence to this hypothesis.
The lease period began July 1, 1967 and during the renovation and after its completion plaintiff visited her property. She originally filed suit for possession in May 1969 for nonpayment of rent timely and failure to install two tie-rods. In May 1970 she amended her pleadings to assert lessees violated city ordinances in renovating the building. It was not until five years later, on November 20, 1974, that appellant raised the issue of violating the prohibition against structural changes without her consent. And now this is allegedly her main complaint. What she fails to consider is the structural changes provision must relate to the time the lease was signed, not to 1812.
Her other complaints of unauthorized lease-violating changes — installation of a standing fireplace, movement of interior partitions, and cutting a doorway — are established as meritless by this provision of an addendum to the lease:
“d. To provide general carpentry, repair work including repairs to all exterior and interior doors, windows and frames, new partitions and plaster work, repairs to the second floor wood floors, construction of new main stair, repairs to first floor slab.”
Before the renovation commenced, plaintiff was given a copy of the addendum prepared by the architect which outlined the proposed changes and improvements that would be made to the premises. Having seen and accepted this document,[2] she cannot now complain about the work that was done in accordance with its specified guidelines.
Finally, her complaint of failing to install two tie-in rods to prevent a slave quarter wall from moving is groundless. The support and bracing was accomplished in another way and the tie-in rods were suggested as a guideline to accomplish this purpose.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. Morrison assigned his interest to Minchen.

. “FOURTH — B
“In the event Lessee desires to make any improvements to or correct any underground plumbing on the above premises, he shall submit to Lessor in writing a copy of the proposed improvements, additions or corrections. Lessor shall have 10 days from the date of receipt of said proposed improvements, additions or corrections in which to approve said improvements or to make Lessors additions to said plans at Lessors cost. After 10 days from the receipt of said notice, [if] Lessor has not notified Lessee in writing by Certified or Registered Mail at 619 Bourbon Street, New Orleans, Louisiana, of Lessor’s desire to add to said improvements, Lessee shall have the right to complete them according to the plans and specifications submitted.”